```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                    CASE NO. 08-20670-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,          Miami, Florida

 5                  Plaintiff,          October 6, 2008

 6        vs.                           4:07 p.m. to 4:56 p.m.

 7   GUSTAVO TAPIAS,

 8                  Defendant.          Pages 1 to 37

 9   _____

10                          CHANGE OF PLEA
                  BEFORE THE HONORABLE JOAN A. LENARD,
11                    UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14

15   FOR THE GOVERNMENT:      MICHAEL SCOTT DAVIS, ESQ.
                              ASSISTANT UNITED STATES ATTORNEY
16                            99 Northeast Fourth Street
                              Miami, Florida 33132

17

18   FOR THE DEFENDANT:       WILLIAM ALEXANDER CLAY, ESQ.
                              11440 North Kendall Drive
19                            Miami, Florida 33176

20   REPORTED BY:             LISA EDWARDS, CRR, RMR
                              Official Court Reporter
21                            400 North Miami Avenue
                              Twelfth Floor
22                            Miami, Florida 33128

23        THE COURT:  United States of America versus Gustavo

24   Tapias, Case No. 08-20670.

25             Counsel, state your appearances, please, for the
```

1    record.

2         MR. DAVIS:  Good afternoon, your Honor.  Michael Davis

3    for the United States.

4         MR. CLAY:  Good afternoon, your Honor.  Bill Clay

5    representing Gustavo Tapias.

6         THE COURT:  Good afternoon, Mr. Clay.

7         And he is here and using the aid of the

8    Spanish-language interpreter.

9         Are we now up and running?

10        THE INTERPRETER:  Yes, your Honor.

11        THE COURT:  You're hearing, Mr. Tapias, through your

12   earphone?

13        THE DEFENDANT:  Yes, your Honor.

14        THE COURT:  We had some problems before; but I'm glad

15   it's been straightened out.

16        He is here for a change of plea.  Correct?

17        MR. DAVIS:  Yes, your Honor.

18        MR. CLAY:  Correct.

19        THE COURT:  Is there a plea agreement?

20        MR. DAVIS:  Yes.  May I approach?

21        THE COURT:  Yes, please.

22        You can be seated.

23        Place him under oath, please.

24        (Whereupon, the Defendant was duly sworn.)

25        THE COURT:  Do you understand, sir, that you are now

1     under oath and if you answer any of my questions falsely, your

2     answers may later be used against you in another prosecution

3     for perjury or for making a false statement?

4               THE DEFENDANT:  Yes.  I do understand.

5               THE COURT:  What is your full name?

6               THE DEFENDANT:  My full name is Gustavo Tapias Ospina.

7               THE COURT:  Have you been known by any other name or

8     names?

9               THE DEFENDANT:  A nickname.

10               THE COURT:  How about Techo?

11               THE DEFENDANT:  Techo.

12               THE COURT:  Okay.  What is your age?

13               THE DEFENDANT:  58, your Honor.

14               THE COURT:  Could you explain your education?  What

15     was the last grade that you completed in school?

16               THE DEFENDANT:  Your Honor, I'm an industrial

17     engineer.

18               THE COURT:  I'm sorry?

19               THE DEFENDANT:  I'm an industrial engineer, your

20     Honor.

21               THE COURT:  Are you currently under the influence of

22     any drug or medication or alcoholic beverage?

23               THE DEFENDANT:  No.  I only take medication for

24     thyroid and for back pain.

25               THE COURT:  Within the last 24 hours, have you used

```
 1   any drug, medication or alcoholic beverage, including the

 2   medication that you take for thyroid and back pain?

 3            THE DEFENDANT:  No, your Honor.

 4            THE COURT:  Have you recently been under the care of a

 5   doctor or a psychiatrist?

 6            THE DEFENDANT:  No, your Honor.

 7            THE COURT:  Have you recently been hospitalized for

 8   any reason, including the use of narcotics, medicine, drugs or

 9   alcohol?

10            THE DEFENDANT:  No, your Honor.

11            THE COURT:  The ability to understand the charge

12   brought against you:  Has that ability been affected at any

13   time by the use of any drug, medication or alcoholic beverage,

14   including the medication that you take for thyroid and back

15   pain?

16            THE DEFENDANT:  No, your Honor.

17            THE COURT:  The ability to understand the explanations

18   and advice given to you by your lawyer:  Has that ability been

19   affected at any time by the use of any drug, medication or

20   alcoholic beverage, including the medication that you take for

21   thyroid and back pain?

22            THE DEFENDANT:  No, your Honor.

23            THE COURT:  Have you read a copy of the information,

24   which sets forth the written charge made against you in this

25   case?
```

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand that you have the right

3   to plead not guilty to any offense charged against you and to

4   persist in that plea?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you understand that you would then have

7   the right to a trial by jury in which you would be assisted by

8   a lawyer in your defense and at which you would have the right

9   to see and hear all of the witnesses who would testify against

10  you and have them cross-examined in your defense?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand that at a trial the

13  Government cannot force you to testify unless you voluntarily

14  do so in your own defense?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Do you understand that, should you decide

17  not to testify at trial or put on any evidence at trial, that

18  these facts cannot be used against you at trial?

19         THE DEFENDANT:  I understand, your Honor.

20         THE COURT:  Do you understand that you would have the

21  right to have subpoenas issued to witnesses to compel them to

22  attend the trial and testify on your behalf?

23         THE DEFENDANT:  I understand, your Honor.

24         THE COURT:  Do you understand that the Government

25  would have to prove beyond a reasonable doubt at trial the

6

```
1   essential elements of the offense charged against you?

2           THE DEFENDANT:  I do understand, your Honor.

3           THE COURT:  And do you also understand that all 12

4   jurors must unanimously agree before a finding of guilty could

5   be made?

6           THE DEFENDANT:  I understand, your Honor.

7           THE COURT:  Do you understand that if you were

8   convicted at trial, you would have the right to appeal my

9   rulings at trial and your conviction?

10          THE DEFENDANT:  I understand, your Honor.

11          THE COURT:  Do you further understand that if you

12  enter a plea of guilty and if I accept your plea of guilty,

13  there will be no trial and you will have waived or given up

14  your right to a trial as well as the various rights associated

15  with a trial that I've just described?

16          THE DEFENDANT:  I understand, your Honor.

17          THE COURT:  You are charged by information that

18  beginning in or around 1995 and continuing through in or around

19  2006, the exact dates being unknown, in Miami-Dade County, in

20  the Southern District of Florida and elsewhere, the Defendant,

21  Gustavo Tapias, also known as Techo, did knowingly and

22  intentionally combine, conspire, confederate and agree with

23  other persons known and unknown to the United States Attorney

24  to import into the United States from a place outside thereof a

25  controlled substance in violation of Title 21, United States
```

1    Code, Section 952(a), all in violation of Title 21, United

2    States Code, Section 963.

3            Pursuant to Title 21, United States Code, Section

4    960(b)(1)(B), it is further alleged that this violation

5    involved five kilograms or more of a mixture and substance

6    containing a detectable amount of cocaine.

7            Is he pleading to the forfeiture as well?  Yes?

8            MR. CLAY:  Yes.

9            THE COURT:  Upon conviction of the violation alleged

10   in this information, the Defendant shall forfeit to the United

11   States any property constituting or derived from any proceeds

12   which the Defendant obtained directly or indirectly as a result

13   of such violation and any property which the Defendant used or

14   intended to be used in any manner or part to commit or

15   facilitate the commission of such violation, all pursuant to

16   Title 21, United States Code, Section 853.

17           Would counsel for the Government make a representation

18   concerning the facts the Government is prepared to prove at

19   trial, please.

20           MR. DAVIS:  Yes, your Honor.

21           If this case were to go to trial, the Government would

22   show that during the time period of this indictment, that is,

23   1995 through 2006, this Defendant conspired with a number of

24   significant Colombian narcotics traffickers, including members

25   of what is known as Colombia's North Valley Cartel, to smuggle

1   multi-hundred kilo loads of cocaine into the United States.

2           By the mid-1990s, the North Valley Cartel eclipsed

3   what had been known as the Cali Cartel as Colombia's most

4   significant -- well, Colombia's most prolific cocaine

5   production and transportation cartel.

6           The North Valley Cartel consists of a group of

7   affiliated Colombian traffickers with various roles in the

8   cocaine-trafficking world.  Some operate labs that produce

9   cocaine.  Others are investors who purchase and control the

10  cocaine once it is produced.  Others are transporters who

11  arrange for and supervise routes for the cocaine to be smuggled

12  out of Colombia and eventually into the United States.

13          This structure of the North Valley Cartel was similar

14  to the structure of other similar Colombian-based

15  narcotics-trafficking organizations that the Defendant assisted

16  and that might not have been considered part of the North

17  Valley Cartel.

18          The Government's evidence would show that during the

19  course of the conspiracy charged in this case the Defendant

20  played a particularly unique role in the Colombian

21  narcotics-trafficking world.  Because of his contacts with both

22  prominent traffickers and Colombian governmental officials,

23  this Defendant was well respected among prominent Colombian

24  traffickers.  Witnesses would testify that this Defendant

25  assisted their cocaine-smuggling activities by acting as a

1    broker or a matchmaker, finding transporters to work with

2    sources of supply of cocaine, and likewise by finding suppliers

3    to serve as traffickers with transportation routes.

4          The Defendant participated in a ring of prominent

5    Colombian traffickers who from the mid-1990s through the

6    remainder of the decade routinely smuggled large loads of

7    cocaine from Colombian to Mexico, from where they were

8    transshipped to destinations in the United States that included

9    the Miami area.

10          These traffickers included, among others, Gabriel

11   Puerta-Parra and now-deceased trafficker Edgar Marroquin.  The

12   Government would show through ledgers obtained in the course of

13   this investigation that the Defendant would be paid from the

14   proceeds of cocaine successfully trafficked through these

15   operations.

16          Loads smuggled through the Marroquin group would be

17   settled, that is, delivered and stored for further

18   transportation and distribution, in both the Miami and New York

19   City areas.

20          Although Marroquin was murdered in January 2001, the

21   Government would show that the Defendant continued working with

22   other traffickers to facilitate the smuggling of large loads of

23   cocaine into the United States.

24          In recent years, the Defendant's role in the Colombian

25   narcotics-trafficking world evolved to include utilizing his

1   connections to assist traffickers by helping them to obtain

2   information from law enforcement.

3          The Government would present cooperating witness

4   testimony to establish that up until at least 2006, the

5   Defendant would use his contacts to corruptly extract

6   information from law enforcement in Colombia on behalf of the

7   North Valley Cartel and other significant Colombian traffickers

8   to assist them in evading arrest and thus allowing them to

9   continue in their narcotics-trafficking activities.  As a

10  result of the Defendant's assistance, thousands of kilos of

11  cocaine were successfully smuggled into the United States.

12         As noted earlier, the Government also would show that

13  other loads imported over the course of this conspiracy were

14  distributed in Miami-Dade County.

15         That's a proffer of the Government's evidence.

16         THE COURT:  What is the amount of cocaine?

17         MR. DAVIS:  Over -- thousands of kilos plus, your

18  Honor.

19         THE COURT:  Do you understand the charge against you,

20  sir?

21         THE DEFENDANT:  Yes, your Honor.  I understand.

22         THE COURT:  Do you admit or not admit the facts as

23  stated by the prosecutor?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Is what the prosecutor stated correct?

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Do you have any deletions or corrections?

3              THE DEFENDANT:  No, your Honor.

4              THE COURT:  How do you wish to plead to the

5    information:  guilty or not guilty?

6              THE DEFENDANT:  Guilty, your Honor.

7              THE COURT:  Are you pleading guilty because you are

8    guilty?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Do you understand that the mandatory

11   minimum penalty of confinement provided by law for the offense

12   to which you plead guilty is ten years' imprisonment?

13             THE DEFENDANT:  Yes.  I understand, your Honor.

14             THE COURT:  And do you also understand that the

15   maximum possible penalty of confinement provided by law for the

16   offense to which you plead guilty is up to life imprisonment?

17             THE DEFENDANT:  Yes.  I understand, your Honor.

18             THE COURT:  In addition, following a term of

19   imprisonment exceeding one year, the Court must impose a term

20   of supervised release.  Such term of supervised release shall

21   commence upon release from imprisonment.

22             The minimum amount of time in supervised release in

23   this matter is five years and the maximum amount of time in

24   supervised release is up to life in supervised release.

25             Do you understand that as well?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand that if you violate the

3    conditions of supervised release, you can be given additional

4    time in prison?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  The maximum fine that may be imposed

7    against you in this offense is up to $4 million.  The Court may

8    sentence you to serve a sentence of confinement and also assess

9    a fine against you.

10          Do you understand that as well?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  In addition to the penalties of

13    confinement and fines, you may be ordered to make restitution;

14    and you will be required to pay a special assessment of $100.

15          Do you understand that as well?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Do you understand that the offense to

18    which you plead guilty is a felony offense?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Do you understand that if your plea of

21    guilty is accepted, you will be adjudicated guilty of that

22    offense?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Mr. Clay, is he a United States citizen?

25          MR. CLAY:  He is not, your Honor.

1              THE COURT:  Do you understand that if you are not a

2    citizen of the United States, such adjudication may subject you

3    to removal proceedings by the Bureau of Immigration and Customs

4    Enforcement pursuant to United States law?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Do you understand that the provisions of

7    the sentencing guidelines promulgated by the United States

8    Sentencing Commission will advise the Court in this matter?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Have you and your attorney talked about

11   how the sentencing guidelines might apply to your case?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Do you understand that the Court will not

14   be able to determine the advisory guideline range for your

15   sentence until after the advisory presentence investigation

16   report has been completed and you and the Government have had

17   the opportunity to challenge the reported facts and the

18   application of the guidelines as recommended by the probation

19   officer?

20             THE DEFENDANT:  Yes.  I understand, your Honor.

21             THE COURT:  Do you understand that the Court will

22   consider all of the sentencing factors provided by law,

23   including the sentencing guidelines?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do you understand that after considering

1    all of these factors, the Court will impose a sentence it finds

2    appropriate, given the statutory minimum and statutory maximum?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Do you understand that the sentence

5    imposed may be different from any estimate your attorney may

6    have given you?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Do you understand that parole has been

9    abolished and that if you are sentenced to prison you will not

10   be released on parole?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Do you understand that under some

13   circumstances, you or the Government may have the right to

14   appeal any sentence that I impose?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Is your plea of guilty being made freely

17   and voluntarily?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Has anyone forced or threatened you or

20   coerced you to plead guilty?

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  Has anyone made any representations to you

23   to convince you to plead guilty other than the representations

24   that were made to you in the plea agreement?

25             THE DEFENDANT:  No, your Honor.

```
 1          THE COURT:  Are you satisfied with your attorney?
 2          THE DEFENDANT:  Yes, your Honor.
 3          THE COURT:  Have you had adequate time to fully confer
 4  with your attorney and he with you about this charge, these
 5  proceedings, and all matters relating to this charge?
 6          THE DEFENDANT:  Yes, your Honor.
 7          THE COURT:  Turning now to the plea agreement, you
 8  agree to plead guilty to the information in this case, which
 9  charges you with conspiring to import into the United States
10  five or more kilograms of cocaine in violation of Title 21,
11  United States Code, Sections 963 and 952(a), all in violation
12  of Title 21, United States Code, Sections 963 and 960(b)(1)(B).
13          You are aware that sentence will be imposed in
14  conformity with the sentencing guidelines and that the
15  applicable guidelines will be determined by the Court relying
16  in part on the results of a presentence investigation by the
17  probation office and that this investigation will begin after
18  your guilty plea has been entered.
19          You are also aware that under certain circumstances,
20  the Court may depart from the applicable guideline range and
21  impose a sentence this is either more severe or less severe
22  than the guideline range.
23          Knowing these facts, you understand and acknowledge
24  that the Court has the authority to impose any sentence within
25  and up to the statutory maximum authorized by law, and you may
```

1    not withdraw your plea solely as a result of the sentence

2    imposed.

3          You agree that your offense and conviction involved

4    150 kilograms or more of cocaine.  Accordingly, you understand

5    and acknowledge that under the sentencing provisions of Title

6    21, United States Code, Section 960(b)(1)(B), the Court must

7    impose a statutory minimum term of imprisonment of at least ten

8    years and may impose a statutory maximum term of imprisonment

9    of up to life.

10         You further understand and acknowledge that this term

11   of imprisonment will be followed by a term of supervised

12   release between a minimum of five years up to life.

13         In addition, the Court may impose a fine of up to

14   $4 million; and a special assessment in the amount of $100 will

15   be imposed on you.  You agree that any special assessment

16   imposed shall be paid at the time of sentencing.

17         The Government reserves the right to inform the Court

18   and the probation office of all facts pertinent to the

19   sentencing process, including all relevant information

20   concerning the offenses committed, whether charged or not, as

21   well as concerning you and your background.

22         Subject only to the express terms of any agreed-upon

23   sentencing recommendations contained in this agreement, the

24   Government further reserves the right to make any

25   recommendation as to the quality and quantity of punishment.

1          You and Government agree that, although not binding on

2     the probation office or the Court, you will jointly recommend

3     that the Court impose a sentence within the advisory guideline

4     range produced by application of the sentencing guidelines.

5          The Government agrees it will recommend at sentencing

6     that the Court reduce by two levels the sentencing guideline

7     level applicable to your offense under Section 3E1.1(a) of the

8     guidelines based upon your recognition and affirmative and

9     timely acceptance of personal responsibility.

10          If your offense level equals a level 16 or greater,

11     the Government agrees it will recommend that the Court reduce

12     your offense level an additional one level under

13     Section 3E1.1(b) of the guidelines, based upon your timely

14     notification of your intent to plead guilty.

15          However, the Government will not be required to make

16     these sentencing recommendations if you fail or refuse to make

17     a full, accurate and complete disclosure to the probation

18     office of the circumstances surrounding the relevant offense

19     conduct, if it is found that you have misrepresented facts to

20     the Government prior to entering this plea agreement or if you

21     commit any misconduct after entering into this plea agreement,

22     including but not limited to, committing a state or federal

23     offense, violating any term of release or making false

24     statements or misrepresentations to any governmental entity or

25     official.

1          Although not binding on the probation office or the

2   Court, you and the Government will jointly recommend that the

3   Court make the following findings and concludes as to the

4   sentence to be imposed:  Section 2D1.1 of the guidelines is the

5   offense guideline applicable to the offense of conviction in

6   this case.  Pursuant to Section 2D1.1(a)(3) and the

7   incorporated Drug Quantity Table, your offense conduct involved

8   150 kilograms or more of cocaine.  No additional specific

9   offense characteristics pursuant to Chapter 2 of the guidelines

10  are applicable to your offense conduct.

11         You and Government agree that, although not binding on

12  the probation office or the Court, you will jointly recommend

13  that the Court find that you qualify for a two-level reduction

14  in your offense level for Count 1 under Sections 2D1.1(b)(7)

15  and 5C1.2 of the guidelines, provided that you are not found to

16  have more than one criminal history point as determined under

17  the guidelines, provided that not later than the time of the

18  sentencing hearing you provide to the Government a written

19  statement truthfully setting forth all information and evidence

20  that you have concerning the offense or offenses that were part

21  of the same course of conduct or of a common scheme or plan as

22  charged in the indictment, and provided that you are not found

23  to have used violence or threats of violence or to have

24  possessed a firearm or other dangerous weapon in connection

25  with the offense, that the offense did not result in death or

1   serious bodily injury to any person and that you are not found

2   to have been an organizer, leader, manager or supervisor of

3   others in the offense.

4        Pursuant to 5C1.2(b) of the guidelines, your offense

5   level resulting from the application of Chapters 2 and 3 of the

6   guidelines is at least a level 17.

7        Although not binding on the probation office or the

8   Court, the Government agrees it will not recommend any upward

9   departures from the advisory guideline range; and you agree

10  that you will not recommend any downward departures from the

11  advisory guideline range.

12       Nothing in this paragraph precludes the Government

13  from moving for and the Court from granting a motion for

14  downward departure under 5K 1.1 of the guidelines or a Rule 35

15  motion under the Federal Rules of Criminal Procedure subject to

16  the provisions of this agreement.

17       The Government agrees it will not file a second

18  offender enhancement under Title 21, United States Code,

19  Section 851.

20       You agree that you shall cooperate fully with the

21  Government by providing truthful and complete information and

22  testimony and producing documents, records and other evidence

23  when called upon by the Government, whether in interviews

24  before a grand jury or at any trial or other court proceeding,

25  by appearing at such grand jury proceedings, hearings, trials

1   and other judicial proceedings and at meetings as may be

2   required by the Government and, if requested by the Government,

3   working in an undercover role to contact and negotiate with

4   others suspected and believed to be involved in criminal

5   misconduct under the supervision of and in compliance with law

6   enforcement officers and agents.

7         The Government reserves the right to evaluate the

8   nature and extent of your cooperation and to make your

9   cooperation or lack thereof known to the Court at the time of

10  sentencing.

11        If in the sole and unreviewable judgment of the

12  Government your cooperation is of such quality and significance

13  to the investigation or prosecution of other criminal matters

14  as to warrant the Court's downward departure from the advisory

15  sentence calculated under the guidelines, the Government may at

16  or before sentencing make a motion consistent with the intent

17  of Section 5K1.1 of the guidelines prior to sentencing or Rule

18  35 of the Federal Rules of Criminal Procedure subsequent to

19  sentencing reflecting that you have provided substantial

20  assistance and recommending that your sentence be reduced from

21  the advisory sentence suggested by the guidelines.

22        You acknowledge and agree, however, that nothing in

23  this agreement may be construed to require the Government to

24  file such a motion; and it is the Government's assessment of

25  the nature, value, truthfulness, completeness and accuracy of

1   your cooperation that shall be binding insofar as the

2   appropriateness of the Government's filing of any such motion

3   is concerned.

4          You understand and acknowledge that the Court is under

5   no obligation to grant a Government motion for sentence

6   reduction as a result of substantial assistance should the

7   Government exercise its discretion and file such a motion.  You

8   understand and acknowledge that the Court is under no

9   obligation to reduce your sentence because of your cooperation.

10          You agree that you will not seek release on bond at

11   any time during the course of this case or any appeal.  You

12   also agree that you shall assist the Government in all

13   proceedings, whether administrative or judicial, involving the

14   forfeiture to the United States or a third country, if

15   requested by the United States, of all rights, title and

16   interest regardless of their nature or form and all assets,

17   including real and personal property, cash and other monetary

18   instruments, including all United States currency that you

19   possessed, transferred or retained in connection with your

20   offense of conviction, wherever located, which you or others to

21   your knowledge have accumulated as a result of illegal

22   activities.

23          Such assistance will involve an agreement on your part

24   to the entry of an order enjoining the transfer or encumbrance

25   of assets which may be identified as being subject to

1    forfeiture.

2           Additionally, you agree to fully assist the United

3    States in identifying and locating all assets that you or

4    others to your knowledge have accumulated as a result of

5    illegal activities.

6           You further agree to fully assist the United States in

7    the transfer and forfeiture of such property to the United

8    States or a third country, if requested by the United States,

9    including by delivery to the Government upon the Government's

10   request of all necessary and appropriate documentation with

11   respect to said assets, including consents to forfeiture,

12   quitclaim deeds and any and all other documents necessary to

13   deliver good and marketable title to said property.

14          You knowingly and voluntarily waive any time or notice

15   requirements in any forfeiture proceeding involving this

16   property and agree not to file a claim in that forfeiture

17   proceeding.

18          You further knowingly and voluntarily waive any

19   jeopardy defense or any claim of double jeopardy, whether

20   constitutional or statutory, and agree to waive any claim or

21   defense under the Eighth Amendment to the United States

22   Constitution, including any claim of excessive fines.

23          You understand and agree that the forfeiture of your

24   assets shall not be treated as satisfaction of any fine

25   restitution, cost of imprisonment or any other penalty the

1    Court may impose upon you.

2         In exchange for the undertakings made by the United

3    States in this plea agreement, you waive all rights, whether

4    asserted directly or by a representative, to request or receive

5    from any department or agency of the United States any records

6    pertaining to the investigation or prosecution of this case,

7    including without limitation any records that may be sought

8    under the Freedom of Information Act, Title 5, United States

9    Code, Section 522, or the Privacy Act of 1974, 5 USC, Section

10   522a.

11        You are aware that Title 18, United States Code,

12   Section 3742, affords you the right to appeal the sentence

13   imposed in this case.

14        Acknowledging this, in exchange for the undertakings

15   made by the United States in this plea agreement, you waive all

16   rights conferred by Title 18, United States Code, Section 3742,

17   to appeal any sentence imposed, including any restitution

18   order, or to appeal the manner in which sentence was imposed,

19   unless the sentence exceeds the maximum permitted by statute or

20   as a result of an upward departure or an upward variance from

21   the guideline range the Court establishes at sentencing.

22        You further understand that nothing in this agreement

23   shall affect the Government's right and/or duty to appeal as

24   set forth in Title 18, United States Code, 3742(b).  However,

25   if the Government appeals your sentence under Section 3742(b),

1   you shall be released from your waiver of appellate rights.

2           You understand that although you will be sentenced in

3   conformity with the sentencing guidelines by this agreement,

4   you waive the right to appeal the sentence on the basis that

5   the sentence is the result of an incorrect application of the

6   sentencing guidelines.

7           You further waive any right to file any motion or make

8   any claim, whether under Title 28, United States Code, Sections

9   2255, 2254, 2241 or any other provision of law to collaterally

10  attack your conviction, your sentence or the manner in which

11  sentence was imposed unless the sentence exceeds the maximum

12  permitted by statute.

13          You confirm that you are guilty of the offense to

14  which you are pleading guilty and that your decision to plead

15  guilty is a decision that you have made and that nobody has

16  forced, threatened or coerced you into pleading guilty.

17          You affirm that you have discussed this matter

18  thoroughly with your attorney.

19          You further affirm that your discussions with your

20  attorney have included discussions of possible defenses that

21  you may raise even if the case -- if the case were to go to

22  trial as well as possible issues and arguments that you may

23  raise at sentencing.

24          You additionally affirm that you are satisfied with

25  the representation provided by your attorney.

1          You accordingly affirm that you are entering into this

2  agreement knowingly, voluntarily and intelligently and with the

3  benefit of full, complete and effective assistance by your

4  attorney.

5          You accordingly agree that by entering into this

6  agreement, you waive any right to file any motion or make any

7  claim, whether under Title 28, United States Code, Sections

8  2255, 2254, 2241, or any other provision of law that contests

9  the effectiveness of your counsel's representation up to the

10  time of the entry of your guilty plea.

11          You are aware that sentence has not yet been

12  determined by the Court.  You are also aware that any estimate

13  of the probable sentencing range or sentence that you may

14  receive, whether that estimate comes from your attorney, the

15  Government or the probation office, it is a prediction, not a

16  promise, and is not binding on the Government, the probation

17  office or the Court.

18          You understand further that any recommendation that

19  the Government makes to the Court as to sentencing, whether

20  under this agreement or otherwise, it is not binding on the

21  Court, and the Court may disregard the recommendation in its

22  entirety.

23          You understand and acknowledge that you may not

24  withdraw your plea based upon the Court's decision not to

25  accept a sentencing recommendation made by you, the Government

1    or a joint recommendation made by both you and the Government.

2              This is the entire agreement and understanding between

3    you and the United States.  There are no other agreements,

4    promises, representations or understandings.

5              Is this your signature on the agreement, sir?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Did you read the agreement before you

8    signed it or was it read to you before you signed it?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Did you discuss fully the agreement with

11   your attorney before you signed it?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Did you understand all the terms of the

14   agreement before you signed it?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Do you understand that in Paragraph 19 on

17   Page 8 that you are giving up your right to appeal your

18   sentence?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And do you understand that in Paragraphs

21   20 and 21 that you are giving up your right to collaterally

22   attack your conviction, your sentence or the manner in which

23   sentence was imposed or the effectiveness --

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  -- or the effectiveness of your counsel's

```
 1   representation?

 2           THE DEFENDANT:  Yes, your Honor.

 3           THE COURT:  Are you entering into this waiver of your

 4   appellate rights and your collateral attack rights freely and

 5   voluntarily?

 6           THE DEFENDANT:  Yes, your Honor.

 7           THE COURT:  Have you fully discussed these waivers

 8   with your attorney?

 9           THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  The terms that I summarized to you:  Are

11   those the terms of your plea agreement with the Government as

12   you understand them?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  Has anyone made any other or different

15   promises or assurances to you in an effort to induce you to

16   enter into this plea agreement and enter a plea of guilty in

17   this case?

18           THE DEFENDANT:  No, your Honor.

19           THE COURT:  Has anyone threatened you or tried in any

20   other way to force you to enter into this plea agreement and

21   enter a plea of guilty in this case?

22           THE DEFENDANT:  No, your Honor.

23           THE COURT:  Do you understand that if I accept your

24   plea of guilty and the sentence that I give you is more severe

25   than you expected, you will still be bound by your plea
```

```
 1    agreement, still be bound by your plea of guilty and you will

 2    have no right to withdraw them?

 3            THE DEFENDANT:  Yes, your Honor.

 4            THE COURT:  Mr. Clay, is this your signature on the

 5    agreement?

 6            MR. CLAY:  It is, your Honor.

 7            THE COURT:  And Mr. Davis, your signature as well?

 8            MR. DAVIS:  Yes, it is, your Honor.

 9            THE COURT:  Mr. Clay, are you satisfied that pleading

10    guilty to the charge is in the best interest of your client,

11    considering all the circumstances in this case?

12            MR. CLAY:  I am absolutely satisfied.

13            THE COURT:  And do you feel there would be sufficient

14    evidence upon which to convict the Defendant of this charge?

15            MR. CLAY:  Yes, your Honor.

16            THE COURT:  Mr. Tapias, do you have any questions,

17    sir, about the possible consequences of your plea of guilty?

18            THE DEFENDANT:  No, your Honor.

19            THE COURT:  Do you understand fully all of the

20    possible consequences of your plea of guilty?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  It is the finding of the Court in the case

23    of the United States of America versus Gustavo Tapias that the

24    Defendant has entered into a waiver of his appellate rights and

25    his collateral attack rights knowingly, freely and voluntarily
```

 1   after full consultation with his attorney and without coercion

 2   or duress.

 3          It is further the finding of the Court in the case of

 4   the United States of America versus Gustavo Tapias that the

 5   Defendant is fully competent and capable of entering an

 6   informed plea; that the Defendant is aware of the nature of the

 7   charge and the consequences of the plea; and that the plea of

 8   guilty is a knowing and voluntary plea supported by an

 9   independent basis in fact containing each of the essential

10   elements of the offense.

11          The plea is therefore accepted, and the Defendant is

12   now adjudicated guilty of the information.

13          A written advisory presentence investigation report

14   will now be prepared by the probation office to assist the

15   Court in sentencing.  You will be asked, sir, to give

16   information for the report; and your attorney may be present if

17   you wish.

18          The Court shall permit the Defendant and counsel to

19   read the advisory presentence investigation report, file any

20   objections to the report before the sentencing hearing.

21          The Defendant and his counsel shall be afforded the

22   opportunity to speak on behalf of the Defendant at the

23   sentencing hearing.

24          At this time, I'm going to refer the Defendant to the

25   probation office for an advisory presentence investigation

1  report.  He's to be remanded to the Bureau of Prisons pending a

2  sentencing date and time which Patricia will give to us now.

3          MR. CLAY:  Your Honor, may I be heard side-bar on the

4  issue of a sentencing date?

5          THE COURT:  Sure.  Come on up.

6          (Whereupon, the following proceedings were had at

7  side-bar:)

8          MR. CLAY:  Bill Clay representing Gustavo Tapias.

9          I would ask and move that this portion of the guilty

10 plea hearing be maintained under seal.

11         THE COURT:  The side-bar?

12         MR. CLAY:  Yes.

13         MR. DAVIS:  No objection.

14         THE COURT:  Okay.

15         MR. CLAY:  My client, your Honor --

16         THE COURT:  It's granted.

17         MR. CLAY:  My client, your Honor, has been cooperating

18 for in excess of three years.  I've been involved in

19 representing him for about two and a half years or a little

20 longer than that.

21         He in fact voluntarily surrendered and was flown into

22 the country on a DEA plane.

23         He's done some pretty extraordinary things in the

24 course of this pre-self-surrender cooperation, including the

25 recording of an extremely high-level Colombian police official

 1    who will be indicted, I believe, in the future.

 2            My client is a person of education.  He's a person who

 3    has operated appropriately, as well as inappropriately and

 4    illegally, in the Colombian political world.  He's a respected

 5    person by both legitimate people and illegitimate people.

 6            Two agents have debriefed him to access the underworld

 7    and the over-world of Colombia, meaning that higher echelon of

 8    good public officials and businesspeople, et cetera, as well as

 9    people who are connected to the cartels, as the Government's

10    factual basis proffer reflected.

11            We are currently, I think, very close to bringing in a

12    fugitive as a result of my client's communication with this

13    fugitive.  The fugitive is one of these individuals that has a

14    $5 million reward from the State Department on his head.  That

15    person has been wanted for over six and a half years.  It's an

16    FBI -- actually, two FBI-made indictments, one in this

17    district, one in the District of New Jersey in Newark.

18            In the past, that fugitive has essentially played

19    games with the US Government.  As a result of Mr. Tapias, he is

20    persuading this fugitive to come forward.  I think that will

21    happen.

22            Another thing that we're embarking upon presently

23    based on Mr. Tapias's cooperation is proving and exposing

24    criminal activity in Venezuela involving Hezbollah.  My client

25    has business -- legitimate business connections in Venezuela.

 1   He knows Venezuelan government officials.  I know this is

 2   timely, given the other trial you're in, so you'll find this

 3   all very, very understandable and believable.

 4         My client knows the chief intelligence individual that

 5   Chavez uses to communicate with the FARC.  That person is

 6   basically the top intel advisor of Chavez.  My client knows

 7   anti-Chavez officials who are cooperating with him and may in

 8   fact even agree to certain roles with the US Government.

 9         In conjunction with these relationships, he has

10   learned of several Hezbollah-related individuals who committed

11   a whole host of crimes, including drug trafficking and money

12   laundering.  And Hezbollah-related drug traffickers remit,

13   according to the literature, US agency literature, 60 to 70

14   percent of the drug proceeds back to Hezbollah.  So they are

15   real idealogical believers in that fanatic stream of Islamic

16   belief and that terrorism.

17         In this case, I've been traveling to Colombia several

18   times a month for about three and a half years.  It's tough to

19   get some of these bigger projects done.

20         I am looking for my client to be able to earn a 5K1.1

21   motion from the Government.

22         THE COURT:  It sounds like he has a wealth of

23   information.

24         MR. CLAY:  He does; and he's performing.

25         But what I'm asking the Court to do is to set a

```
 1   February or March date to give us -- my client and I and the

 2   agents handling this the time to get some of these other very

 3   important projects completed.  I have really just scratched the

 4   surface for you.  There's so much more than this.

 5            THE COURT:  I think I'm setting in November.

 6            When am I setting now?  November or December?

 7            THE COURTROOM DEPUTY:  December.

 8            THE COURT:  So what's your position?

 9            MR. DAVIS:  We yield to the Court's discretion on the

10   sentencing date, your Honor.

11            THE COURT:  I'll give you a February date.  That's

12   fine.

13            MR. CLAY:  Thank you, your Honor.

14            THE COURT:  Now, I can tell you this, that I'm

15   probably going to want to go forward in February unless you

16   give me some extenuating circumstances that we should not go

17   forward with sentencing, because you can always come back for a

18   Rule 35.

19            I'll consider whatever you want to bring before me,

20   Mr. Clay.  But at some point -- I don't like to carry these

21   things --

22            MR. CLAY:  I understand.

23            THE COURT:  -- for months and years while someone's

24   cooperating when we can deal with it after sentence is imposed

25   as easily as we can deal with it prior to sentence.  But I'll
```

 1    give you February.

 2              MR. CLAY:  Thank you.  I appreciate it.

 3              MR. DAVIS:  Your Honor, before we break the side-bar,

 4    just to be careful and to be clear, while I trust that Mr. Clay

 5    is relating this information that his client -- that he

 6    believes his client is in good faith, what his client can or

 7    can't do has not been independently verified by the Government.

 8              THE COURT:  Right.  I'm not making any ruling or any

 9    consideration on anything that he said for purposes of any 5K1.

10    That'll be the Government's decision as to how to proceed.

11              MR. DAVIS:  In the event this is unsealed at some

12    later time, I just want it to be made perfectly clear that what

13    Mr. Clay is relating is his belief about what his client can do

14    to assist the United States.  It's not been independently

15    verified by the United States.

16              THE COURT:  Okay.

17              MR. DAVIS:  The United States certainly cannot vouch

18    for the overall accuracy of what Mr. Clay --

19              THE COURT:  That's why I say I'll give you till

20    February; and then I'm going to want to go forward in

21    sentencing.  The Government can make their decision as to

22    whether they want to go forward on that day or not go forward

23    or go forward at a later time on a Rule 35.

24              If either side thinks there's a reason to continue the

25    sentencing, make your motion, and I'll consider it at that

1    time.  But I will tell you that I had one case a couple years

2    ago where I was carrying it for a year.  I really don't like to

3    do that.  There's no reason to do that.  There is an available

4    avenue through a Rule 35.  I won't say anything about the

5    limitations, because it never seems to -- there really are no

6    limitations if the parties agree that there are no limitations.

7    There is an avenue and there's a way to proceed.

8           But I'll give you the opportunity.  I don't mind

9    waiting a little bit.  But at some point, I'm going to want to

10   go forward.

11          MR. CLAY:  Thank you, your Honor.

12          I certainly agree with Mr. Davis's comments, but I

13   don't do anything in any case without really having a strong

14   good-faith basis.  In this one, my client's past performance is

15   probably the best indicator of the future possibility.

16          Unlike the stock market --

17          THE COURT:  It sounds like you both have your work cut

18   out for you.

19          MR. CLAY:  We have a lot of good work cut out.  But I

20   appreciate your giving me time.

21          THE COURT:  No problem.

22          MR. DAVIS:  Thank you.

23          (Whereupon, the following proceedings were had in open

24   court:)

25          THE COURT:  Could I have a sentencing date, please.

```
 1              THE COURTROOM DEPUTY:  February 9 at 2:00 p.m.

 2              THE COURT:  February 9 at 2:00 p.m.

 3              Anything further in this case?

 4         MR. CLAY:  Nothing from the defense your Honor.

 5         MR. DAVIS:  Just very briefly, your Honor, I want to

 6  clarify one thing that I said in shorthand.

 7              When the Court asked me how much -- what was the

 8  quantity of narcotics involved in the case, I said shorthand

 9  over a -- or a thousand kilos plus, were the words that I used.

10  And I meant to convey, as I believe the Defendant understands,

11  in excess of a thousand kilos.

12              THE COURT:  That's the way I took what you said.

13              Was there any dispute as to that, Mr. Clay?

14         MR. CLAY:  No, your Honor.  That's the way I heard it

15  and understood it.  So we're on the same page.

16              THE COURT:  Thank you so much.  We're in recess.  Nice

17  to see you both.

18              (Proceedings concluded.)

19

20

21

22

23

24

25
```

1

C E R T I F I C A T E

2

3          I hereby certify that the foregoing is an

4    accurate transcription of the proceedings in the

5    above-entitled matter.

6

7

                          /s/Lisa Edwards
8    _____        LISA EDWARDS, CRR, RMR
         DATE             Official United States Court Reporter
9                         400 North Miami Avenue, Twelfth Floor
                          Miami, Florida 33128
10                        (305) 523-5499

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25